## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

ALLINA HEALTH SERVICES                            )
d/b/a ABBOTT NORTHWESTERN HOSPITAL,               )
800 East 28th Street                              )
Minneapolis, Minnesota 55407                      )        Case No.: _____
                                                  )
ALLINA HEALTH SERVICES                            )
d/b/a UNITED HOSPITAL,                            )
333 North Smith Avenue                            )
Saint Paul, Minnesota 55102                       )
                                                  )
ALLINA HEALTH SERVICES                            )
d/b/a UNITY HOSPITAL,                             )
550 Osborne Road                                  )
Fridley, Minnesota 55432                          )
                                                  )
FLORIDA HEALTH SCIENCES CENTER, INC.              )
d/b/a TAMPA GENERAL HOSPITAL,                     )
1 Tampa General Circle                            )
Tampa, Florida 33606                              )
                                                  )
MONTEFIORE MEDICAL CENTER,                        )
111 East 210th Street                             )
Bronx, New York 10467                             )
                                                  )
MOUNT SINAI MEDICAL CENTER OF                     )
FLORIDA, INC.                                     )
d/b/a MOUNT SINAI MEDICAL CENTER,                 )
4300 Alton Road                                   )
Miami Beach, Florida 33140                        )
                                                  )
THE NEW YORK HOSPITAL MEDICAL CENTER              )
OF QUEENS,                                        )
56-45 Main Street                                 )
Flushing, New York 11355                          )
                                                  )
THE NEW YORK METHODIST HOSPITAL,                  )
506 Sixth Street                                  )
Brooklyn, New York 11215                          )
                                                  )
THE NEW YORK AND PRESBYTERIAN HOSPITAL            )
d/b/a NEW YORK PRESBYTERIAN HOSPITAL/             )
WEILL CORNELL MEDICAL CENTER,                     )
525 East 68th Street                              )
New York, New York 10021                          )

|  |  |
|---|---|
| Plaintiffs, | ) |
|  | ) |
| v. | ) |
|  | ) |
| SYLVIA M. BURWELL, Secretary | ) |
| United States Department of | ) |
| Health and Human Services, | ) |
| 200 Independence Avenue, S.W. | ) |
| Washington, DC 20201, | ) |
|  | ) |
| Defendant. | ) |
|  | ) |

## COMPLAINT FOR JUDICIAL REVIEW AND DECLARATORY AND INJUNCTIVE RELIEF UNDER THE MEDICARE ACT

### NATURE OF ACTION

1.      The nine plaintiff Hospitals in the instant action were plaintiffs in *Allina Health Services v. Sebelius*, 746 F.3d 1102 (D.C. Cir. 2014).  The interpretive issue in that earlier case was whether Medicare "enrollees in Part C are 'entitled to benefits' under Part A, such that they should be counted in the Medicare [part A/SSI] fraction, or whether, if not regarded as 'entitled to benefits under Part A,' they should instead be included in the Medicaid fraction" of the Medicare disproportionate share hospital ("DSH") adjustment.  *Id. at* 1105.  In particular, that case addressed the validity of a 2004 rule changing the agency's interpretation.  *Id*.  The D.C. Circuit affirmed this Court's vacatur of that rule, but concluded that the question of how the agency should proceed on remand was not yet presented.  *Id*. at 1111.

2.      Plaintiff Hospitals have brought this further action to prevent the agency from *ever* treating part C days as part A days in the DSH calculations for *any* periods prior to October 1, 2013.  The Hospitals contend that such an interpretation is both procedurally and substantively invalid.

## JURISDICTION AND VENUE

3.      This action arises under the Medicare Act, Title XVIII of the Social Security Act,

42 U.S.C. § 1395 *et seq.*, and the Administrative Procedure Act ("APA"), 5 U.S.C. § 551 *et seq.*

4.      Jurisdiction is proper under 42 U.S.C. § 1395oo(f)(l).

5.      Venue is proper in this judicial district under 42 U.S.C. § 1395oo(f)(l).

## PARTIES

6.      The plaintiffs in this action are:

    a.      Allina Health Services, d/b/a Abbott Northwestern Hospital, Medicare provider number 24-0057, for the cost reporting period ending December 31, 2012;

    b.      Allina Health Services, d/b/a United Hospital, Medicare provider number 24-0038, for the cost reporting period ending December 31, 2012;

    c.      Allina Health Services, d/b/a Unity Hospital, Medicare provider number 24-0132, for the cost reporting period ending December 31, 2012;

    d.      Florida Health Sciences Center, Inc., d/b/a Tampa General Hospital, Medicare provider number 10-0128, for the cost reporting period ending September 30, 2012;

    e.      Montefiore Medical Center, Medicare provider number 33-0059, for the cost reporting period ending December 31, 2012;

    f.      Mount Sinai Medical Center of Florida, Inc., d/b/a Mount Sinai Medical Center; Medicare provider number 10-0034, for the cost reporting period ending December 31, 2012;

    g.      The New York Hospital Medical Center of Queens, Medicare provider number 33-0055, for the cost reporting period ending December 31, 2012;

    h.      The New York Methodist Hospital, Medicare provider number, 33-0236, for the cost reporting period ending December 31, 2012; and

    i.      The New York and Presbyterian Hospital, d/b/a New York Presbyterian Hospital / Weill Cornell Medical Center, Medicare provider number 33-0101, for the cost reporting period ending December 31, 2012.

7.      The defendant is Sylvia M. Burwell, in her official capacity as Secretary of the

United States Department of Health and Human Services ("HHS"), the federal agency that

administers the Medicare program.  References to the Secretary herein are meant to refer to her, to her subordinates, and to her official predecessors or successors as the context requires.

8.      The Centers for Medicare and Medicaid Services ("CMS") is a component of HHS with responsibility for day-to-day operation and administration of the Medicare program. CMS was formerly known as the Health Care Financing Administration.  References to CMS herein are meant to refer to the agency and its predecessors.

## LEGAL AND REGULATORY BACKGROUND

### Medicare DSH Payment

9.      Part A of the Medicare Act covers "inpatient hospital services." 42 U.S.C. § 1395d(a)(l).  Since 1983, the Medicare program has paid most hospitals for the operating costs of inpatient hospital services under the prospective payment system ("PPS").   42 U.S.C. §§ 1395ww(d)(l)-(5); 42 C.F.R. Part 412.   Under PPS, Medicare pays predetermined, standardized amounts per discharge, subject to certain payment adjustments.  *Id.*  One of the PPS payment adjustments is the DSH payment.  *See* 42 U.S.C. § 1395ww(d)(5)(F); 42 C.F.R. § 412.106.

10.      Under the statutory provisions in effect during the period at issue here, a hospital that serves a disproportionate share of low-income patients is entitled to an upward percentage adjustment to the standard PPS rates.  *See* 42 U.S.C. § 1395ww(d)(5)(F); *see also* 42 C.F.R. § 412.106.  A hospital may qualify for a DSH adjustment based on its "disproportionate patient percentage."   *See* 42 U.S.C. §§ 1395ww(d)(5)(F)(i)(I) and (d)(5)(F)(v); 42 C.F.R. § 412.106(c)(1).  As a proxy for utilization by low-income patients, the disproportionate patient percentage determines a hospital's qualification as a DSH, and it also determines the amount of the DSH adjustment.   *See* 42 U.S.C. §§ 1395ww(d)(5)(F)(iv) and (vii)-(xiii); 42 C.F.R.

§ 412.106(d).  The disproportionate patient percentage is defined as the sum of two fractions expressed as percentages.  42 U.S.C. § 1395ww(d)(5)(F)(vi).

11.     The first fraction that is used to compute the DSH payment is commonly known as the "Medicaid fraction."  The statute defines the Medicaid fraction as:

> the fraction (expressed as a percentage), the numerator of which is the number of the hospital's patient days for such period which consist of patients who (for such days) were eligible for medical assistance under a State plan approved under [Title XIX], but who were *not entitled to benefits under part A* of [Title XVIII], and the denominator of which is the total number of the hospital's patient days for such period.

42 U.S.C. § 1395ww(d)(5)(F)(vi)(II) (emphasis added).  As reflected in the italicized language above, the numerator of the Medicaid fraction consists of days for patients who were both eligible for medical assistance under Title XIX, or Medicaid, and "not entitled to benefits under part A" of Title XVIII, or Medicare.[1]

12.     The other fraction that is used to compute the DSH payment is the "Medicare part A/SSI fraction" or "SSI fraction."  The statute defines this fraction as:

> the fraction (expressed as a percentage), the numerator of which is the number of such hospital's patient days for such period which were made up of patients who (for such days) were *entitled to benefits under part A* of [Title XVIII] and were entitled to supplemental security income benefits (excluding any State supplementation) under subchapter XVI of this chapter, and the denominator of which is the number of such hospital's patient days for such fiscal year which were made up of patients who (for such days) were *entitled to benefits under part A* of [Title XVIII]...

42 U.S.C. § 1395ww(d)(5)(F)(vi)(I) (emphasis added).  As the italicized language indicates, the Medicare part A/SSI fraction consists solely of days for patients who were "entitled to benefits under part A" of Medicare.  The denominator includes all part A days, whereas the numerator includes only those part A days for patients who are also entitled to social security income

---

[1] The statute refers to "this subchapter," that is, subchapter XVIII of Chapter 7 of Title 42 of the U.S.C., which is Title XVIII of the Social Security Act.

("SSI") benefits under Title XVI.  The Medicare part A/SSI fraction is computed for each federal fiscal year by CMS, and must be used to compute a hospital's DSH payment adjustment for the cost reporting period beginning in the federal fiscal year.  42 C.F.R. §§ 412.106(b)(2)-(3).

### Medicare Part C

13.     Section 4001 of the Balanced Budget Act of 1997, Pub. Law No. 105-33, added a new part C to Title XVIII of the Social Security Act to establish a Medicare program known as the Medicare+Choice program, now called Medicare Advantage.[2]  A Medicare beneficiary can elect to receive Medicare benefits either through the original fee-for-service program under Medicare parts A and B, or through enrollment in a Medicare Advantage plan under Medicare part C.  42 U.S.C. § 1395w-21(a)(1); 42 C.F.R. § 422.50; *see also* 63 Fed. Reg. 34,968 (June 26, 1998) ("Under section 1851(a)(1), every individual entitled to Medicare Part A and enrolled under Part B ... may elect to receive benefits through *either* the existing Medicare fee-for-service program or a Part C M+C plan.") (emphasis added).

14.     Prior to the 2004 rulemaking, in which the agency attempted to adopt a new policy to begin counting part C days in the Medicare part A/SSI fractions, "the Secretary treated Part C patients as *not* entitled to benefits under Part A."  *Allina Health Servs.*, 746 F.3d at 1106. From 1986 through 2004, the Secretary interpreted the term "entitled to benefits under part A" to mean covered, or paid, by Medicare part A.  The regulation governing the calculation of the part A/SSI fraction directed the Secretary to determine "the number of covered patient days that … [a]re furnished to patients who … were entitled to both Medicare Part A and SSI." 42 C.F.R. § 412.106(b)(2)(i) (2003); *see* 42 C.F.R. § 409.3; *see also* 51 Fed. Reg. 16,772, 16,788 (May 6, 1986); 51 Fed. Reg. 31,454, 31,460-61 (Sept. 3, 1986); *Allina Health Servs.*, 746 F.3d at 1108

---

[2] The Medicare Prescription Drug, Improvement, and Modernization Act of 2003 (Pub. L. 108-173), which was enacted on December 8, 2003, replaced the Medicare+Choice program with the new Medicare Advantage program under part C of Title XVIII.

(describing the agency's "policy … of excluding Part C days from the Medicare fraction and including them in the Medicaid fraction"); *id.* at 1106 ("Prior to 2003, the Secretary treated Part C patients as *not* entitled to benefits under Part A."); *Catholic Health Initiatives-Iowa Corp. v. Sebelius*, 718 F.3d 914, 921 n.5 (D.C. Cir. 2013) (noting that the pre-2004 regulation unambiguously limited the part A/SSI fraction to "covered Medicare Part A inpatient days"); *Northeast Hosp. Corp. v. Sebelius*, 657 F.3d 1, 14-17 (D.C. Cir. 2011).

15.     Further, there was written guidance prior to 2004 repeatedly expressing the Secretary's interpretation that part C days, as days for which patients were not entitled to part A, were to be excluded from the part A/SSI fraction.  This guidance included instructions to hospitals and program memoranda transmitting the part A/SSI fractions on an annual basis from the enactment of part C through the 2004 rulemaking.  *See, e.g.*, HCFA Pub. 60A, Transmittal No. A-98-21 (July 1, 1998) (instructing non-teaching hospitals not to file "no-pay" the bills for services furnished to part C patients that would have been necessary to count part C days in the part A/SSI fraction); HCFA Pub. 60A, Transmittal No. A-98-36 (Oct. 1, 1998) (transmitting part A/SSI fractions that excluded part C days, specifying that the fractions include only "covered Medicare days," and referring to the ratio of SSI days and "covered Medicare days" as "the ratio of Medicare Part A patient days attributable to SSI recipients"); HCFA Pub. 60A, Transmittal No. A-99-42 (Sept. 1, 1999) (same); HCFA Pub. 60A, Transmittal No. A-00-54 (Aug. 17, 2000) (same); CMS Pub. 60A, Transmittal No. A-01-109 (Sept. 13, 2001) (same); CMS Pub. 60A, Transmittal No. A-02-086 (Sept. 11, 2002) (same); CMS Pub. 60A, Transmittal No. A-03-067 (Aug. 8, 2003) (same); CMS Pub. 100-04, Transmittal 275 (Aug. 13, 2004) (same).

16.     In the May 2003 proposed rule for federal fiscal year 2004, the Secretary proposed "to clarify" her long held position that "once a beneficiary elects Medicare Part C,

those patient days attributable to the beneficiary should not be included in the Medicare fraction of the DSH patient percentage." 68 Fed. Reg. 27,154, 27,208 (May 19, 2003). Further, "[t]hese days should be included in the count of total patient days in the Medicaid fraction (the denominator), and the patient's days for a [part C] beneficiary who is also eligible for Medicaid would be included in the numerator of the Medicaid fraction." *Id*. The Secretary explained that "once a beneficiary has elected to join a Medicare Advantage plan, that beneficiary's benefits are no longer administered under Part A." *Id.*

17.    In 2004, however, in the final rule for the federal fiscal year 2005, the Secretary reversed course and "abruptly announced a change in policy." *Allina Health Servs. v. Sebelius*, 904 F. Supp. 2d 75, 78 (D.D.C. 2012), *aff'd*, 746 F.3d at 1107-10. That 2004 rule "adopt[ed] a policy" to include part C days in the Medicare part A/SSI fraction and exclude them from the Medicaid fraction effective October 1, 2004. 69 Fed. Reg. 48,916, 49,099 (Aug. 11, 2004); *see also Northeast Hosp.*, 657 F.3d at 16.

### The *Allina* Litigation

18.    In *Allina Health Services*, a group of hospitals, including the hospitals in this case, challenged the applicability of the 2004 rulemaking to several cost reporting periods ending after October 1, 2004, contending, among other things, that the abrupt reversal in policy did not meet notice and comment requirements and was not the product of reasoned decision making because the agency failed to acknowledge or explain its departure from past policy.

19.    This Court agreed and held that the policy announced in the 2004 rulemaking regarding part C days was not the logical outgrowth of a proposed rule. 904 F. Supp. 2d at 89-92. This Court also held that the "cursory explanation in the 2004 Final Rule failed to meet the requirements of the APA" because "the Secretary[] fail[ed] to acknowledge her 'about-face,'" and "her reasoning for the change was brief and unconvincing." *Id.* at 93 (quoting *Northeast*

7

*Hosp.*, 657 F.3d at 15).  Accordingly, this Court concluded that "[t]he portion of the 2004 Final Rule … that announced the Secretary's interpretation of the Medicare Disproportionate Share Hospital Fraction, as codified in 2007 at 42 C.F.R. § 412.106(b)(2) and as further modified in 2010, will be vacated, and the case will be remanded to the Secretary for further action consistent with this Opinion."  *Id*. at 95.

20.     Approximately one month after the Court ruled, it issued a post-judgment order responding to the government's request that the Court clarify the scope of its judgment.  The Court noted that its ruling "necessarily included a finding that the 2004 Final Rule—on which the Secretary relied in defending the FY 2007 calculations . . . —was procedurally defective and, therefore, infirm *ab initio*."  Post-Judgment Order, ECF No. 47, at 2 (Dec. 18, 2012).  In this Order, the Court also stated that its prior judgment "remanded the case to the Secretary to recalculate [the] reimbursements [at issue] without using the interpretation set forth in the 2004 Final Rule."  *Id*.  The government appealed.

21.     Meanwhile, on or about June 27, 2013, the agency published 2011 part A/SSI fractions for all hospitals nationwide that included part C days.  Consistent with the Court's vacatur of the 2004 rule, the Secretary calculated revised fractions for 2011 for the Hospitals in the *Allina* litigation that did not apply the vacated rule, but rather excluded part C days from the part A/SSI fraction, consistent with the pre-2004 policy.  *See* Technical Direction Letter, TDL-130516, Sept. 3, 2013.  Earlier in 2013, the agency had also revised 2010 fractions initially published by the Secretary on or about October 17, 2012 to exclude part C days for the Hospitals in the *Allina* litigation.  Technical Direction Letter, TDL-13179, Jan. 30, 2013.  Even though those instructions transmitted part A/SSI fractions that did *not* include part C days for the *Allina*

plaintiffs, the agency did not instruct its contractors to include part C days in the Medicaid fraction for patients who were also eligible for Medicaid.

22.     For hospitals not plaintiffs in the *Allina* litigation that received final payment determinations on their cost reports using part A/SSI fractions that included part C days, the Secretary had instructed the contractors as follows:  "In the event of an unfavorable final nonappealable decision in *Allina Health Services v. Sebelius*, the cost report will be reopened to adjust the Disproportionate Share payment calculation."  *See id.*  Nevertheless, it does not appear that CMS has yet instructed its contractors to issue corrected part A/SSI fractions that exclude part C days or to include Medicaid eligible part C days in the Medicaid fraction for hospitals that were not plaintiffs in the *Allina* case.

23.     While the appeal was pending, the agency engaged in a new notice and comment rulemaking on the treatment of part C days.  In that rulemaking, the agency "proposed to readopt the policy of counting the days of patients enrolled in [part C] plans in the Medicare fraction" "in an abundance of caution."  78 Fed. Reg. 50,496, 50,615 (Aug. 19, 2013).  Accordingly, effective as of October 1, 2013 on a prospective basis only, the rule governing the DSH calculation is the same as the vacated rule had been.  *See id.* at 50,619 (rule "readopt[ion]" applies to "FY 2014 and subsequent years" only).

24.     On April 1, 2014, the D.C. Circuit affirmed this Court's *Allina* decision on the merits, "agree[ing] with the district court that the Secretary's final rule was not a logical outgrowth of the proposed rule."  746 F.3d at 1109.  Because this procedural failure was a sufficient basis to vacate the rule, the D.C. Circuit did not reach the arbitrariness of the Secretary's explanation.  *Id.* at 1111.

25.     With respect to remedy, the D.C. Circuit held that this Court "correctly concluded that vacatur was warranted." *Id.*  The court reversed, however, that part of this Court's remedy that "ordered the Secretary to recalculate the hospitals' reimbursements 'without using the interpretation set forth in the 2004 Final Rule.'" *Id.* (quoting the Post-Judgment Order).  The D.C. Circuit held that the "question whether the Secretary could reach the same result" on remand as would have applied under the vacated rule "was not before the district court" and therefore this Court should have simply "remand[ed] after identifying the error." *Id.*  The D.C. Circuit noted that "only in rare cases. . . does the court direct the agency how to resolve a problem." *Id.* at 1111 n.6.

26.     The D.C. Circuit's mandate issued on May 28, 2014, and the time for filing a petition for *certiorari* expired on June 30, 2014.

## <u>Medicare Appeals Process</u>

27.     The Secretary contracts with private organizations (usually insurance companies) to perform certain audit and payment functions under part A of the Medicare program.  These organizations are commonly referred to as "intermediaries" or "Medicare Administrative Contractors."

28.     After the close of each fiscal year, a hospital is required to file a cost report with its designated intermediary.  42 C.F.R. §§ 413.20, 413.24.

29.     The intermediary analyzes the cost report and issues a determination, called a Notice of Program Reimbursement or "NPR," that informs the hospital of the intermediary's final determination as to the amount of Medicare reimbursement due the hospital for the fiscal year covered by the cost report.  *See* 42 C.F.R. § 405.1803; *See also In re Medicare Reimbursement Litig. (Baystate Health System v. Thompson)*, 309 F. Supp. 2d 89, 92 (D.D.C. 2004), *aff'd*, 414 F.3d 7 (D.C. Cir. 2005).

30.    The Provider Reimbursement Review Board ("Board") is an administrative tribunal appointed by the Secretary.  *See* 42 U.S.C. § 1395oo(h).  Each of the appointed members of the Board must be "knowledgeable in the field of payment to providers of service" under the Medicare program.  *Id.*

31.    Pursuant to 42 U.S.C. § 1395oo(a)(l)(A)(i), a hospital may appeal to the Board if the hospital is dissatisfied with an intermediary's determination as to the amount of Medicare payment due the hospital for a cost reporting period as reflected in an NPR.

32.    Congress recognized that a hospital's right to challenge a Medicare payment policy should not be delayed indefinitely because a Medicare contractor fails to issue a NPR timely.  Accordingly, pursuant to 42 U.S.C. §§ 1395oo(a)(1)(B) and (C), a hospital may also request a hearing from the Board when its intermediary has failed to issue a final determination for its perfected cost report within 12 months of the date of receipt of a cost report by the intermediary.

33.    A hospital may obtain expedited judicial review of a "question of law or regulations relevant to the matters in controversy" in an appeal to the Board when "the Board determines . . . that it is without authority to decide the question." 42 U.S.C. § 1395oo(f)(l); *see also* 42 C.F.R. § 405.1842(a)(1).

34.    The statute provides that a Board decision finding that it lacks authority to decide a question of law "shall be considered a final decision and not subject to review by the Secretary."  42 U.S.C. § 1395oo(f)(l).  A hospital may initiate an action for judicial review of that question of law in this Court within 60 days of the Board's determination.  *Id.*

## FACTS SPECIFIC TO THIS CASE

35.    All nine plaintiff Hospitals in this case were also plaintiffs in *Allina*.

11

36.     On June 13, 2014, the agency published its calculations of the part A/SSI fractions for every hospital in the country for cost years beginning in federal fiscal year 2012.  Those fractions included part C days for all hospitals, including the prevailing hospitals in *Allina*.  The release noted that the fractions included part C days.[3]  But the agency provided no explanation for the Secretary's determination to include part C patient days in the part A/SSI fraction following the D.C. Circuit's decision affirming the vacatur of the 2004 rule change.

37.     The plaintiff Hospitals notified the Secretary of their view that these 2012 part A/SSI fractions were impermissible and sought assurances from the Secretary that new 2012 fractions that exclude part C days would be calculated for the plaintiff Hospitals.  The Secretary did not agree to issue new fractions for the plaintiff Hospitals.

38.     These 2012 part A/SSI fractions are binding on the intermediaries, who must apply them without alteration when issuing NPRs for the plaintiff Hospitals.  *Baystate Med. Ctr. v. Leavitt*, 545 F. Supp. 2d 20, 24 (D.D.C. 2008).  None of the plaintiff Hospitals has received an NPR reflecting final Medicare DSH payment determinations for their cost reporting periods beginning in federal fiscal years 2012.

39.     As a result, the plaintiff Hospitals timely filed appeals to the Board, pursuant to 42 U.S.C. §§ 1395oo(a)(1)(B), to challenge the agency's treatment of Medicare part C days as Medicare part A days for purposes of the part A/SSI fraction and the Medicaid fraction of the Medicare DSH calculation for their 2012 cost years.[4]

---

[3]2012 Part A/SSI Fraction Data File.  *Available at* http://www.cms.gov/Medicare/Medicare-Fee-for-Service-Payment/AcuteInpatientPPS/Downloads/FY-2012-SSI-Ratios-for-web-posting.zip.

[4] The Hospitals also filed a motion for further relief in *Allina* seeking to address the narrow question of whether the Secretary has violated the mandate in that case.  The Hospitals contend there that the Secretary cannot either apply the vacated rule or otherwise treat part C days as part A days in advance of an adjudication that the agency apparently has planned to adopt the same policy again for periods prior to October 1, 2013.  This case presents the broader question of whether the Secretary is barred from *ever* treating part C days as part A days for those periods.

40.     The Hospitals filed their appeals within 180 days of the 12-month anniversary of the filing of their 2012 cost reports.  The Board assigned case numbers 14-3736G and 14-3813GC to those appeals.

41.     All of the plaintiff Hospitals requested that the Board grant expedited judicial review over whether the Secretary can validly treat part C days as part A days in their 2012 DSH calculations.

42.     By letter dated August 13, 2014, the Board found jurisdiction over the plaintiff Hospitals' appeals and granted expedited judicial review.

43.     The plaintiff Hospitals have timely initiated this action for expedited judicial review pursuant to 42 U.S.C. § 1395oo(f)(l).

## ASSIGNMENT OF ERRORS

44.     The Medicare statute provides for expedited judicial review of the question presented here "pursuant to the applicable provisions under chapter 7 of title 5," *i.e.*, the Administrative Procedure Act.  42 U.S.C. § 1395oo(f)(l).

45.     The applicable provisions of the APA provide that the "reviewing court shall . . . hold unlawful and set aside agency action . . . found to be . . . (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; . . .(C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; (D) without observance of procedure required by law; [or] (E) unsupported by substantial evidence[.]" 5 U.S.C. § 706(2).

46.     An interpretation that treats part C days as part A days for purposes of the Hospitals' DSH calculations for periods prior to October 1, 2013 is invalid because vacatur of the 2004 rule adopting a policy change restored the previously-governing policy until it is changed by rulemaking that could validly be applied to these years, which has not occurred.  *See* 5 U.S.C. § 553(c); 42 U.S.C. § 1395hh(a)(2); *Croplife Am. v. EPA*, 329 F.3d 876, 879 (D.C. Cir. 2003)

(vacating rule and holding that "[a]s a consequence, the agency's previous practice ... is reinstated and remains in effect unless and until it is replaced by a lawfully promulgated regulation"); *Action on Smoking & Health v. Civil Aeronautics Bd.,* 713 F.2d 795, 797-98 (D.C. Cir. 1983) ("[B]y vacating or rescinding [one rule], the judgment of this court had the effect of reinstating the rules previously in force," which "cannot again be revoked without new rulemaking[.]"); *see also Heartland Reg'l Med. Ctr. v. Sebelius*, 566 F.3d 193, 198 (D.C. Cir. 2009) (explaining that had an earlier district court decision vacated a rule, it "likely would have required HHS to make payments to those hospitals [the challenger hospital and "similarly situated hospitals"] for those [challenged] years and for any subsequent years until the agency repromulgated the same rule and gave an adequate reason for rejecting the alternatives").  The Secretary has engaged in a rulemaking applicable on a prospective basis to federal fiscal year 2014 and later (*i.e.*, beginning October 1, 2013), 78 Fed. Reg. at 50,619, but has engaged in no rulemaking for the period from the vacated 2004 rulemaking through fiscal year 2013.

47.    An interpretation that treats part C days as part A days is also invalid because the Medicare Act specifies that where, as here, the final rule "is not a logical outgrowth of a previously published notice of proposed rulemaking …, such provision shall be treated as a proposed regulation and shall not take effect."  42 U.S.C. § 1395hh(a)(4).  In violation of this provision, the Secretary has treated the 2004 rule not as a mere "proposed regulation," but has applied the policy for 2012 as if it had been finalized in a new rule for these periods.

48.    The Medicare Act provides that "[n]o rule, requirement, or other statement of policy … that establishes or changes a substantive legal standard governing … the payment for services … shall take effect unless it is promulgated by the Secretary by regulation."  42 U.S.C. § 1395hh(a)(2).  An interpretation to treat part C days as part A days "changes a substantive legal

standard governing … the payment for services" within the meaning of this statute.  *See Queen City Home Health Care Co. v. Sullivan*, 978 F.2d 236 (6th Cir. 1992) (identifying three features of a "substantive legal standard" subject to Section 1395hh(a)(2): nationwide applicability, permanence (*i.e.*, not updated annually), and promulgation by the Secretary rather than by a contractor).  Thus, the Medicare Act requires notice and comment rulemaking to change policy regarding the treatment of part C days.

49.     Furthermore, because the now-reinstated pre-2004 regulation and the Secretary's definitive interpretation of it both provide that part C days must be excluded from the part A/SSI fraction and included in the Medicaid fraction, the agency is procedurally barred by the APA from altering that policy without going through notice-and-comment rulemaking.  *See* 5 U.S.C. § 551(5) ("'rule making' means agency process for … amending … a rule"); *Thomas Jefferson Univ. v. Shalala*, 512 U.S. 504, 512 (1994) (regulation's meaning as reflected in the "regulation's plain language or by other indications of the Secretary's intent at the time of the regulation's promulgation" governs absent a valid change through rulemaking); *Envtl. Integrity Project v. EPA*, 425 F.3d 992, 995 (D.C. Cir. 2005) ("[A]n interpretation of a legislative rule cannot be modified without the notice and comment procedure that would be required to change the underlying regulation—otherwise, an agency could easily evade notice and comment requirements by amending a rule under the guise of reinterpreting it.").

50.     Moreover, because the purpose of the DSH adjustment is to provide additional payment under the part A prospective payment system for hospitals that incur higher costs in treating low-income patients, an agency interpretation that treats part C days as part A days is also unreasonably and impermissibly inconsistent with the legislative history and purpose of the Medicare DSH statute.  *See* H.R. Rep. No. 99-241(I), *reprinted in* 1986 U.S.C.C.A.N 579; *AFL-*

*CIO v. Chao*, 409 F.3d 377 (D.C. Cir. 2005) (invalidating, under *Chevron* step two, an agency rule as inconsistent with congressional policy); *Health Ins. Ass'n of Am. Inc. v. Shalala*, 23, F.3d 412, 416 (D.C. Cir. 1994) (rule impermissible under *Chevron* step two because it "conflict[s] with the policy judgments that undergird the statutory scheme").   Reasonableness is also a function of an interpretation's "conformity to statutory purposes."   *Goldstein v. SEC*, 451 F.3d 873, 881 (D.C. Cir. 2006).[5]

51.     In addition, the Secretary's determination in the 2012 part A/SSI fractions to include part C days in the part A/SSI fraction constitutes the adoption of a new rule for which notice-and-comment rulemaking is required.   The determination to include part C days in the part A/SSI fraction used "clear and unequivocal language" that created a "'binding norm'" regarding part C days which is "'finally determinative of the issues or rights to which it is addressed,'" *Croplife Am.*, 329 F.3d at 881 (quoting *Chamber of Commerce v. U.S. Dep't of Labor*, 174 F.3d 206, 212 (D.C. Cir. 1999)), because the part A/SSI fractions are binding on the Secretary's contractors, 42 C.F.R. § 412.106(b)(2).   Accordingly, the determination "constitutes a binding regulation" that can only be promulgated through notice-and-comment rulemaking.   *Croplife Am.*, 329 F.3d at 881.

52.     The agency's determination to treat part C days as part A days for 2012 DSH calculations is also arbitrary and capricious.   The agency failed to "display awareness that it is changing position" when making this policy change, and impermissibly "depart[ed] from a prior policy *sub silentio*."   *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009).   Given that the agency said even less here than in its insufficient 2004 rulemaking, the determination to

---

[5] For the reasons discussed in Judge Kavanaugh's concurring opinion in *Northeast Hospital*, 657 F.3d at 18-24, the language of the statute is plain and also forecloses an interpretation to treat part C days as part A days in the DSH calculation.  The plaintiff Hospitals recognize that this Court is bound by the contrary decision of the panel in *Northeast Hospital*, 657 F.3d at 2, but make this claim to preserve it to the extent that *certiorari* to the Supreme Court is ever granted in this case.

include part C days in the part A/SSI fractions for federal fiscal year 2012 patently fails the test of reasoned decision-making. *See Allina Health Servs.*, 904 F. Supp. 2d at 93 ("[T]he Secreatry's cursory explanation in the 2004 Final Rule failed to meet the requirements of the APA."). Moreover, the agency provided no "explanation of how [its] interpretation serves the statute's objectives," *Northpoint Tech., Ltd. v. FCC*, 412 F.3d 145, 151 (D.C. Cir. 2005), thus utterly failing to demonstrate that "the agency considered the matter in a detailed and reasoned fashion," *ITT Indus., Inc. v. NLRB*, 251 F.3d 995, 1004 (D.C. Cir. 2001).

## REQUEST FOR RELIEF

53.     The plaintiff Hospitals request an Order:

A.     declaring invalid and enjoining the Secretary from applying any policy of treating part C days as part A days for purposes of calculating Medicare DSH calculation for periods prior to October 1, 2013;

B.     directing the Secretary to calculate the plaintiff Hospitals' DSH payments consistent with that Order and to make prompt payment of any additional amounts due the plaintiff Hospitals plus interest calculated in accordance with 42 U.S.C. § 1395oo(f)(2);

C.     requiring the Secretary to pay legal fees and cost of suit incurred by the plaintiff Hospitals; and

D.     providing such other relief as the Court may consider appropriate.

Respectfully Submitted,

Stephanie A. Webster
  DC Bar No. 479524
Christopher L. Keough
  DC Bar No. 436567
Hyland Hunt
  DC Bar No. 999276
Alex J. Talley
  DC Bar No. 1020488
AKIN GUMP STRAUSS HAUER & FELD LLP
1333 New Hampshire Avenue, N.W.
Washington, D.C.  20036
Phone: (202) 887-4049
Fax: (202) 887-4288
swebster@akingump.com

Counsel for Plaintiffs

Dated:   August 19, 2014